Concurring opinion filed by Circuit Judge TATEL.
*971 Concurring opinion filed by Circuit Judge MILLETT.
Dissenting opinion filed by Circuit Judge KAVANAUGH.
TATEL, Circuit Judge:
The Labor-Management Reporting and Disclosure Act sets out fiduciary duties that officers and other agents of unions owe the union that employs them. It also permits a union member to bring a lawsuit for breach of those duties in federal court “for the benefit of the labor organization,” but only after “the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so.” 29 U.S.C. § 501(b). The statute does not, however, expressly give the union itself a cause of action for breach of fiduciary duty in federal court. In this case, we must decide whether the statute contains an implied cause of action for the union itself. Our decision on a closely related issue in Weaver v. United Mine Workers of America, 492 F.2d 580 (D.C. Cir. 1973) (per curiam), requires that we answer that question in the affirmative.
I.
Until September 24, 2009, Assane Faye was a nonmember employee of the International Union, Security, Police and Fire Professionals of America (the “Union”). The Union brought this suit alleging that while it employed him, Faye breached his fiduciary duties to the Union in a number of ways, including by encouraging union members to join a rival union. Specifically, the Union alleged that Faye breached his fiduciary duties under section 501 of the federal Labor-Management Reporting and Disclosure Act (LMRDA). The Union also asserted similar claims under state law, as well as a breach of contract claim under the Labor Management Relations Act (LMRA).
After several rounds of briefing, the district court concluded that the LMRDA provides a cause of action only to individual union members, not to the union itself, and that the LMRA provides no cause of action to a union seeking to sue a nonmember employee. The district court concluded that because neither federal statute provided the Union with a cause of action, it lacked federal question jurisdiction over the case. And because no other ground for-subject matter jurisdiction existed, the district court ruled that it had “no basis to exercise supplemental jurisdiction over plaintiffs state common law claims.” International Union, Security, Police & Fire Professionals of America v. Faye, 115 F.Supp.3d 40, 47 (D.D.C. 2015). The district court thus dismissed the Union’s entire suit without prejudice for lack of subject matter jurisdiction.
The Union now appeals, contending that the LMRDA gives it a cause of action and that the district court thus also has supplemental jurisdiction over its state law claims. The Union offers no challenge to the district court’s dismissal of its LMRA claim. Our review is de novo. See El Paso Natural Gas Co. v. United States, 750 F.3d 863, 874 (D.C. Cir. 2014) (“We review de novo the District Court’s dismissal of claims for want of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim under Rule 12(b)(6).”).
II.
This case presents a single substantive issue: whether LMRDA section 501 provides a union with a federal cause of action against its agent for breach of a fiduciary duty owed to the union. This question has been reserved by the Supreme Court, see Guidry v. Sheet Metal Workers National Pension Fund, 493 U.S. 365, 374 n.16, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), and is already the subject of a *972 circuit split, compare Building Material & Dump Truck Drivers, Local 120 v. Traweek, 867 F.2d 500 (9th Cir. 1989) (finding no implied cause of action), with International Union of Operating Engineers, Local 150, AFL-CIO v. Ward, 563 F.3d 276 (7th Cir. 2009), and International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers, AFL-CIO v. Statham, 97 F.3d 1416 (11th Cir. 1996) (finding an implied cause of action).
Before proceeding to the merits, we pause to clarify the nature of our inquiry. As noted above, the district court concluded that it lacked subject matter jurisdiction because the LMRDA gives the Union no cause of action. Earlier decisions likewise tended to speak of the inquiry in jurisdictional terms. See, e.g., Guidry, 493 U.S. at 374 n. 16, 110 S.Ct. 680 (speaking in jurisdictional terms in the course of reserving the issue); Traweek, 867 F.2d at 505 (treating the matter as jurisdictional).
The Supreme Court has recently made clear, however, that the question whether the plaintiff has a cause of action is distinct from the question whether a district court has subject matter jurisdiction. In Arbaugh v. Y&H Corp., 546 U.S. 500, 510-16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006), the Court held that the fact that the defendant did not employ the number of employees statutorily required to hold it liable under Title VII went to the merits, not jurisdiction. And in Lexmark International, Inc. v. Static Control Components, Inc., — U.S. -, 134 S.Ct. 1377, 1388 n. 4, 188 L.Ed.2d 392 (2014) (quoting Verizon Maryland Inc. v. Public Service Commission of Maryland, 535 U.S. 635, 642-43, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002)), the Court wrote that “ ‘the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court’s statutory or constitutional power to adjudicate the case.’ ” Here, as in Lex-mark, the plaintiffs claim is at least “arguable,” regardless of whether it is “valid.” Our inquiry thus goes to the merits, not jurisdiction, which exists under the general federal question jurisdiction statute, 28 U.S.C. § 1331. See District of Columbia Nurses Ass’n v. Brown, No. 15-203, 153 F.Supp.3d 1, 1-2, 2016 WL 29252, at *1-2 (D.D.C. Jan. 4, 2016) (reaching the same result).
In determining whether an implied cause of action exists, “[t]he judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy. Statutory intent on this latter point is determinative.” Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (internal citation omitted). Absent statutory intent to create a cause of action, none exists, and “courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.” Id. at 286-87, 121 S.Ct. 1511.
Congress enacted the LMRDA in 1959 in response to various union corruption scandals and an associated congressional investigation. See 29 U.S.C. § 401(b) (explaining that Congress had found “a number of instances of breach of trust, corruption, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct”). The LMRDA provision at issue in this case contains two relevant subsections. The first, section 501(a), bears the title “Duties of officers; exculpatory provisions and resolutions void,” and provides as follows:
The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into *973 account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.
Id. § 501(a). The second, section 501(b), bears the title, “Violation of duties; action by member after refusal or failure by labor organization to commence proceedings; jurisdiction; leave of court; counsel fees and expenses,” and provides as follows:
When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization. No such proceeding shall be brought except upon leave of the court obtained upon verified application and for good cause shown, which application may be made ex parte. The trial judge may allot a reasonable part of the recovery in any action under this subsection to pay the fees of counsel prosecuting the suit at the instance of the member of the labor organization and to compensate such member for any expenses necessarily paid or incurred by him in connection with the litigation.
Id. § 501(b).
The statute thus gives union members an express federal cause of action against a union agent for breach of the fiduciary duties set forth in section 501(a). Union members may bring such a suit “for the benefit of the [union],” provided that they first satisfy certain procedural requirements. Central to this case, however, nothing in the statute expressly gives the union itself such a cause of action.
In assessing whether a union nonetheless has an implied cause of action under section 501, we do not write on a clean slate. In Weaver v. United Mine Workers of America, 492 F.2d 580 (D.C. Cir. 1973) (per curiam), this court faced issues closely related to those presented here. There, relying on section 501’s express cause of action, union members sued union officers, as well as the union itself. Id. at 582. Only one of the plaintiff union members, however, had satisfied the statutory procedural requirements before bringing suit, and that plaintiff was murdered while the case was pending. Id. The defendants, including the union, moved to dismiss on the ground that none of the remaining plaintiffs had satisfied the statute’s procedural requirements. Id. The district court denied these *974 motions, but certified them for interlocutory review. Id. at 582 & n. 8.
While the appeal was pending, a union election occurred, and control shifted to new officers supported by and supportive of the plaintiffs (including some of the plaintiffs themselves). Id. at 582-83. The union then filed motions to withdraw its appeal, to intervene on behalf of the plaintiff union members, and to dismiss the appeal filed by the defendant officers as moot in light of the union’s intervention as a plaintiff. Id. at 583.
This court granted the union’s motions and directed the district court to permit the union to realign as a party plaintiff. In doing so, the court analogized union member suits under section 501 to shareholder derivative suits. Id. at 586. The court noted that the union “possesses exclusively the financial interest at stake,” and that, accordingly, “although under its former leadership the [union] was aligned as a defendant!,] • • • the litigation since its commencement has in reality been its own.” Id. at 585. “Moreover, in conditioning the availability of a derivative action under Section 501 on the refusal of a union to bring the action itself, Congress expressed its preference that the union prosecute a claim for breach of fiduciary duty against union officials.” Id. at 586 (internal citation omitted). Because “[a]llowing the [union] to assume the prosecution of this cause would further that legislative preference,” the court concluded, the union “must be accorded that right.” Id. This court conceptualized the union as fully taking over control of the litigation and displacing the plaintiff union members, as demonstrated by its “understanding that the [union-member plaintiffs] will move the District Court for leave to be dropped as party-plaintiffs,” id. at 587 n. 35, as well as by its dismissal as moot of the defendant officers’ appeal challenging the remaining plaintiff union members’ failure to comply with the statute’s procedural requirements, id. at 587.
Weaver thus holds, at least, that where union members have properly sued under section 501, the union itself may take control of the suit and displace the union members. In this case, the district court distinguished Weaver on the ground that the opinion “did not address a union’s right to initiate suit on its own behalf.” Faye, 115 F.Supp.3d at 44 n. 2. The district court and we are bound, however, “not only [by] the result” of a prior case, “but also [by] those portions of the opinion necessary to that result.” Seminole Tribe of Florida v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In allowing the union to take over control of the litigation, the Weaver court necessarily determined that the union was a proper plaintiff in a section 501 fiduciary duty suit. Indeed, in language ignored by the dissent, it emphasized that “the litigation since its commencement has in reality been [the union’s] own.” Weaver, 492 F.2d at 585. Neither the district court nor Faye has offered any persuasive justification for reading the statute to require that a union “be accorded [the] right” to take over a suit that “since its commencement has in reality been its own,” id. at 585-86, but not to allow the union to simply bring “its own” suit in the first instance. Moreover, the Weaver court’s dismissal of the individual defendants’ appeal as moot necessarily means that it resolved the union’s right to litigate a section 501 suit.
Accordingly, although Weaver did not squarely address the precise question of a union’s right to bring a section 501 suit in the first instance, the reasoning necessary to that decision compels the conclusion that a union may indeed do so. In contrasting a union’s ability to litigate under section 501 as an intervening plaintiff with its ability to do so as an original *975 plaintiff, the district court focused on a distinction without a difference. Weaver established both that a section 501 suit is properly understood as belonging to the union and that the union is a proper party to litigate it. The question before us— whether section 501 gives a union a cause of action for breach of fiduciary duty— thus did not “ ‘merely lurk in the [Weaver] record, neither brought to the attention of the court nor ruled upon.’ ” See Dissenting Op. at 988 (quoting LaShawn A v. Barry, 87 F.3d 1389, 1395 n. 7 (D.C. Cir. 1996) (en banc)). Rather, Weaver answered it in the affirmative. Nor, contrary to the dissent’s suggestion, id. at 973-74, are we free to ignore our precedent merely because a party incorrectly concedes that it fails to bind us.
The parties’ dispute over the Union’s state law claims requires much less attention. Because the Union’s section 501 claim is properly before the district court, supplemental jurisdiction exists for the Union’s state law claims.
III.
For the foregoing reasons, we reverse the district court’s order dismissing the Union’s claims under section 501 and state law for lack of subject matter jurisdiction.

So ordered.